UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

FRANKLIN ALAN MILLER,                                    Civil No. 09-2405 (DWF/LIB)

      Petitioner,

v.     **REPORT AND
     RECOMMENDATION**

STATE OF MINNESOTA,

      Respondent.

---

    This matter is before the undersigned United States Magistrate Judge on Petitioner's

application for habeas corpus relief under 28 U.S.C. § 2254.  The case has been referred to this

Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

Petitioner Frank Miller ("Petitioner") is a prisoner at the Minnesota Correctional Facility at Rush

City, Minnesota. Petitioner was sentenced to life in prison by the State District Court for St.

Louis County, Minnesota for committing first-degree murder. (Pet. [Docket No. 1], p. 1-2).

    Petitioner filed this current federal habeas corpus petition under 28 U.S.C. § 2254.  On

October 6, 2010, this Court issued a Report and Recommendation recommending that the

Petitioner's writ for habeas corpus be denied and that the action be dismissed with prejudice.

(Docket No. 15).  Thereafter, the Petitioner filed objections to the undersigned's Report and

Recommendation.  (Docket No. 23).  Also, the Petitioner filed a Motion for Leave to File an

Amended Application for a Writ of Habeas Corpus.  (Docket No. 18).  District Court Judge

Donovan Frank granted the Petitioner's motion to file an amended petition and denied the

Defendant's objections to the undersigned's initial report and recommendation as moot.  (Docket

No.  24).

Presently before the Court is the Petitioner's Amended Petition for Writ of Habeas Corpus.  After reviewing both the original petition and the amended petition, the Court remains unsure whether the Petitioner intended his amended petition to supercede his original petition. The Court notes that some of the Plaintiff's claims raised in his original petition were not included in his amended petition, such as his claim that the grand jury indictment is invalid.   At the same time, Petitioner adds many new facts to his memorandum in support of his petition in an attempt to bolster some of the claims made in his original petition.  As such, because the claims and facts of both petitions are so intertwined, the Court reads both the original petition and the amended petition together as one petition for a writ of habeas corpus.  The following Report and Recommendation necessarily addresses the Petitioner's arguments as to both petitions.  Therefore, this Report and Recommendation supercedes the Court's previous Report and Recommendation and hereafter addresses the original Petition as well as the Amended Petition as a single petition.

The petitioner lists six grounds for relief. Ground One alleges that the grand jury indictment should be dismissed because the State failed to disclose evidence of deals between the State and key witnesses.  (Petr's Mem. in Supp. of Issuance of Writ of Habeas Corpus ("Petr's Mem. #1") [Docket 2], p. 21-22). Grounds Two through Four allege due process violations because the State withheld exculpatory evidence. (Pet., p. 5-6; Petr's Mem. #1, p. 16, 20-25). Ground Five requests a new trial because the prosecutor failed to correct false testimony given by a witness.  (Petr's Mem. #1, p. 17-19). Ground Six claims Petitioner was not provided with his constitutional right to effective assistance of counsel. (Petr's Mem. #1, p. 16).   Lastly, Petitioner's Ground Seven (Ground Three in his Amended Petition) contends that the Petitioner was denied effective assistance of trial and appellate counsel because they did not argue that his

sentence was unconstitutionally imposed ex post facto.  (Petr's Mem. In Supp. of Am. Pet. ("Petr's Mem. #2) [Docket No. 30], p. 11-14).  For the reasons discussed below, it is RECOMMENDED that the petition be DENIED.

## I.   FACTUAL BACKGROUND

On June 15, 2004, Travis Holappa ("Holappa") stole Petitioner's pickup truck while attending a party in Aurora, Minnesota. State v. Miller, 754 N.W.2d 686, 693 (Minn. 2008). The truck contained an ATV in the pick up bed and a backpack that held methamphetamines and thousands of dollars.  Id.  Eventually, Holappa returned the truck and ATV.  Id.  However, the money and drugs remained missing.  Id.

In mid-July, Petitioner asked Jason Anderson ("Anderson") to recover the money from Holappa.  Id.  On July 24, Anderson saw Holappa at a party and threatened Holappa to "pay up." Id.  After Anderson informed Petitioner that Holappa was partying, Petitioner became angry.  Id. That night, Petitioner arranged a meeting between Holappa and Anderson at the Gladiator Bar in Gilbert, Minnesota.  Id.  Petitioner and Anderson arrived at the bar in Petitioner's Cadillac.  Id. However, Holappa arrived late.  Id. Anderson and Petitioner met him outside.  Id.   At this point, Holappa's friend Adam Hill ("Hill"), who had followed Holappa to the bar, saw Anderson hitting Holappa.  Id. at 694.  Hill started towards Petitioner's car to help Holappa, but Petitioner threatened Hill that he would shoot him.  Id.  Hill left the scene.  Id.  Anderson testified at trial that Petitioner was armed with a .22-caliber pistol during the confrontation and showed the gun while ordering Holappa into the backseat.  Id.   Next, Petitioner picked up a white Mitsubishi he was considering purchasing from a friend.  Id.  Petitioner drove the Mitsubishi while Anderson drove the Cadillac to a friend's house where they stayed overnight.  Id.

On the morning of July 25, Anderson and Petitioner drove the Cadillac and the Mitsubishi to Jesse Ridlon's ("Ridlon") house. Id. When they arrived, Petitioner pulled Holappa out of the trunk of the Mitsubishi and placed him on Ridlon's garage floor. Id. The three men proceeded to demand money from Holappa, kick him, and hit him. Id. Ridlon stated that Petitioner was "wound up real tight," started "smacking [Holappa] around, pistol-whipping him." Id. Next, Petitioner bound Holappa with duct tape and locked him back in the Mitsubishi's trunk. Id. For the rest of the morning, Petitioner, Anderson, and Ridlon smoked methamphetamine. Id.

That afternoon, Anderson left while Ridlon and Petitioner remained at Ridlon's house. Id. Sam Miller, Petitioner's brother, arrived at the house and smoked methamphetamine. Id. While at Ridlon's, Sam Miller watched Petitioner talk to Holappa by the Mitsubishi. Id. In addition, Sam Miller heard Petitioner exclaim that he wasn't "going to have nobody do [his] dirt." Id. at 695. Later that day, Sam Miller and Petitioner made plans to go dirt biking. Id. While Sam Miller loaded his bike onto a truck, Petitioner told Sam he would meet them at the dirt biking location because he had "some shit to take care of." Id. Sam Miller stated that Petitioner appeared stressed and angry. Id.

A couple of hours later, Petitioner met Sam Miller to go dirt biking. Id. Sam Miller asked Petitioner what happened to Holappa. Id. Petitioner replied he "emptied a clip in him." Id. At trial, Sam Miller testified that Petitioner then said he was "just kidding," he "sent [Holappa] to Colorado." Id. During this time, Sam Miller found Petitioner to be in a joking mood. Id. Later that night, Petitioner returned to Ridlon's and Ridlon left to work the night shift at his job. Id. Petitioner's friend, Jeremy Finke ("Finke") was also at Ridlon's. Id. Finke testified that Petitioner was pacing back and forth in the garage, swearing at Finke, and acting

mad.  Id.  Finke saw a pistol in Petitioner's hand and became "scared as hell."  Id.  He watched

Petitioner leave in his Cadillac.  Id.

After midnight the same night, Danielle Frazee ("Frazee") picked up Anderson at his

mother's house to go to a friend's apartment to smoke methamphetamine.  Id.  On the morning of

July 26, Petitioner arrived at the apartment.  Id.  When asked about Holappa, Petitioner told

Anderson to keep his mouth shut and declared, "[t]hey ain't got enough to indict me."  Id.  Later

that evening, Richard McNeill ("McNeill") and Petitioner drove to Dean Dunn's ("Dunn")

house.  Id.  While McNeill and Petitioner had been friends for over a year, Dunn and Petitioner

only met once before.  Id.  McNeill retrieved a .22-caliber automatic pistol and told Dunn to "cut

it up."  Id. at 696.  Dunn hesitated, so Petitioner picked up the gun, pointed it at him, and told

him to do as he was told.  Id.  Dunn melted the gun over a garbage container, burned the wooden

grips in a fire pit, and later threw the metal from the gun in a ditch.  Id.  Then, Frazee arrived and

the group smoked methamphetamine.  Id.  Petitioner departed in his Cadillac with Frazee

following him.  Id.  After Petitioner abandoned his Cadillac, Frazee drove him to the Twin

Cities.  Id.  A few days later, Petitioner and Hill spoke on the telephone.  Id.  Petitioner said he

sent Holappa "on a one-way ticket somewhere" and that he "wasn't going to come back."

On July 27, the police arrested Anderson for Holappa's kidnapping.  Id.  Two days later,

the police searched the white Mitsubishi and found duct tape, Holappa's watch, and blood later

determined to be Holappa's.  Id.  On July 31, the police recovered Petitioner's Cadillac.  Id.

Inside the vehicle, police officers found a .22-caliber cartridge casing, Petitioner's fingerprints,

and Petitioner's dirt biking gear.  Id.  On August 2, the police arrested Petitioner.  Id.  While in

jail, Petitioner spoke on the telephone with his girlfriend, K.K.  Id.  During one of the phone

calls, K.K. told Petitioner she was sorry because "this is all my fault."  Id.  Petitioner replied,

"You had nothing to do with it.  I did it.  I'm f\*\*\*cking, you know, -I-pay-you-know, I played, I pay. That's how it goes." Id.

On September 2, Holappa's remains were found. Id. Near the body, police found cartridge casings, three bullet fragments, and pieces of duct tape. Id. After police discovered the remains, a grand jury indicted Petitioner for two counts of first-degree murder and two counts of kidnapping. Id. at 697. At the grand jury, Anderson, Ridlon, Sam, Hill, Dunn, Frazee, a BCA investigator and a medical examiner testified. Id. The same witnesses, along with 33 others, testified at the jury trial. Id. In addition, the medical examiner testified that the cause of death was gunshot wounds to the head. Id. at 696-97. Also, a firearm expert testified that the cartridge casings found at the crime scene and the cartridge casing located in Petitioner's Cadillac were all fired from the same weapon. Id. After his conviction, Petitioner filed a direct appeal, which was stayed pending the filing of a petition for postconviction relief. Id. at 692. The postconviction court denied relief and the Petitioner appealed the decision. Id. The Minnesota Supreme Court simultaneously considered both the postconviction and direct appeals. Id. The Court rejected all of Petitioner's arguments and affirmed his conviction. Id. Petitioner's habeas corpus petition followed.

## II.   DISCUSSION

### A.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) instructs federal courts to engage in a "limited and deferential review of underlying state court decisions." Mark v. Ault, 498 F.3d 775, 782-83 (8th Cir. 2007). Under the AEDPA, relief may not be granted to the petitioner unless the state court's decision

> (1) resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts consider a decision "contrary to" precedent when a state court "arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 413 (2000). An "unreasonable application" of federal law exists when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 408. Federal courts "may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411)). During review of state court decisions, a "federal court also presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A petitioner can only rebut the presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

**B.      Ground One:  Petitioner's Grand Jury Claim**

In Petitioner's first ground for relief, he argues that the indictment against him should be dismissed because the State failed to inform the grand jury about an alleged deal between the prosecution and a witness.  (Petr's Mem. #1, p. 21-22.)  Petitioner claims that his brother, Sam Miller, testified against him in exchange for the dismissal of a felony fleeing from the police charge. Id.  Further, Petitioner alleges that the full inducements given to Anderson and Ridlon in exchange for their testimony were not disclosed to the grand jury.  Id.  Because the evidence

could have been used to impeach Sam Miller, Anderson, and Ridlon, Petitioner argues it was exculpatory and should have been disclosed to the grand jury.  Id.

In a petition for habeas corpus, a Petitioner must successfully show that he exhausted the state remedies for each claim he brings.  The doctrine of exhaustion requires a petitioner to "fairly present" his federal claims to the state courts.  Baldwin v. Reese, 541 U.S. 27, 29 (2004). Petitioners must present the substance of any federal claims "in each appropriate state court (including a state supreme court with powers of discretionary review)."  Id.  The "[m]ere similarity between ... state law claims and … federal habeas claims is insufficient" to satisfy the fair presentation requirement. Carney v. Fabian, 487 F.3d 1094, 1097 (8th Cir. 2007).  Instead, the petitioner must "have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts."  Id. at 1096.  When a prisoner fails to exhaust his state court remedies for a claim, and state procedural rules preclude any attempt to satisfy the exhaustion requirement for that claim, then the claim is not unexhausted, but rather "procedurally defaulted."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Thus, if a state court remedy remains, courts classify a previously unraised habeas claim as "unexhausted," but if state court remedies are no longer available, then courts consider the claim "procedurally defaulted."  Armstrong v. Iowa, 418 F.3d 924, 926 (8th Cir. 2005).

Here, Petitioner raised a number of claims on appeal to the Minnesota Supreme Court. Among the claims brought on appeal, Petitioner included a challenge to the grand jury process similar to his claim raised here.  However, Petitioner presented his grand jury claim to the Minnesota Supreme Court in the form of a state law question.  The brief offered in support of his appeal cited only state law and state cases in support of the claim.  (Appellant's Brief in File No.

A05-2519 ("App. Br.") [Appendix to Docket No. 11], p. 11-15).  Petitioner argued that the

exclusion of details of deals between witnesses and the state was exculpatory and required

presentation to the grand jury under Minnesota state law. Id.  Petitioner wholly failed to mention

federal law or the U.S. Constitution.  Therefore, the Minnesota Supreme Court was not given a

full and fair opportunity to consider the federal aspect of the claim. Instead, the Court examined

the issue in the context of state law and state precedent.  See Miller, 754 N.W.2d at 699-700.

Furthermore, Petitioner still does not cite any federal case law or federal constitutional basis for

this claim in his petition for habeas corpus. (Petr's Mem. #1, p. 21-22).  Because Petitioner failed

to present his claim as a federal issue to the Minnesota Supreme Court, he fails to meet the

requirements of exhaustion necessary for federal review.

　　　　When a petitioner fails to exhaust a claim, federal courts will review whether the

unexhausted claim is procedurally defaulted which means that state law bars the claim from

being heard in state court.  McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997).  However, the

state procedural rule preventing relief must be well established and regularly followed for a

claim to be considered procedurally defaulted.  Oxford v. Delo, 59 F.3d 741, 744 (8th Cir. 1995).

Minnesota courts have "consistently held that a claim raised on direct appeal will not be

considered upon a subsequent petition for post conviction relief." Roby v. State, 521 N.W.2d

482, 484 (Minn. 1995) (citing State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976)).  Further,

Minnesota precludes relief for "all claims known but not raised by the defendant …" at the time

of the direct appeal.  Carney v. State, 692 N.W.2d 888, 891 (Minn. 2005).

　　　　In this case, Petitioner's grand jury claim raised on his petition for habeas corpus mirrors

the claim raised on direct appeal to the Minnesota Supreme Court.  Thus, Petitioner could have

argued in his appeal to the Minnesota Supreme Court that the deficiencies during the grand jury

proceedings violated federal law. Because Petitioner knew about alleged grand jury deficiencies but failed to raise his claim as a federal law violation to the Minnesota Supreme Court on direct review, he has no further recourse under Minnesota law.  See, Carney, 692 N.W.2d at 891; Roby, 521 N.W.2d at 484.  Thus, the Court finds his claim procedurally defaulted.

However, federal courts review procedurally defaulted claims when the petitioner demonstrates "cause for the default and prejudice as a result of the alleged violation of federal law," Reagan v. Norris, 279 F.3d 651, 656 (8th Cir. 2002) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)), or a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. The "fundamental miscarriage of justice exception" requires a "showing based on new evidence, that a constitutional violation has probably resulted in the conviction of one who is actually innocent." Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995).  Petitioner can still succeed if he shows cause and prejudice or a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. at 750.  To show cause, Petitioner would have to show that "something external to the petitioner, something that cannot fairly be attributed to him …" prevented him from raising his federal claim in state court.  Coleman, 501 U.S. at 753.  Petitioner provides no evidence to support such a claim.  He also fails to demonstrate that he suffered any prejudice. Since Petitioner has not satisfied the cause component required to overcome his claim's procedural default, it is unnecessary to address the prejudice component.  Ashker v. Class, 152 F.3d 863, 871 (8th Cir. 1998).  In addition, Petitioner cannot meet the "fundamental miscarriage of justice" exception because he failed to present any "reliable new evidence" providing clear and convincing proof that he is actually innocent of Holappa's murder.  Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005).  As such, Petitioner's procedural default of his grand jury claim

cannot be overcome and this Court remains unable to adjudicate his claim.  The Court denies

Petitioner relief based on Ground One.

### C.  Grounds Two Through Four:  Petitioner's Exclusion of Exculpatory Evidence Claims

Petitioner's second, third and fourth claims allege that the State's failure to disclose

exculpatory evidence violated his right to due process.   The discovery process violates due

process when the State fails "to disclose evidence that is material to the issue of guilt and is

exculpatory in nature." Brady v. Maryland, 373 U.S. 83, 87 (1963).  A Brady violation requires a

petitioner to show three components (1) the evidence must be material and favorable to the

accused; (2) the evidence must have been suppressed by the state, either willfully or

inadvertently; and (3) prejudice ensued.  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Analysis under Brady often turns on whether the excluded evidence is material.  In the

absence of materiality, Courts consider any failure to disclose information to a defendant

harmless error.  Dye v. Stender, 208 F.3d 662, 665 (8th Cir. 2000).   Materiality requires

examining both the strength of the evidence at issue and the importance of the witness in

establishing the defendant's guilt.  Clay v. Bowersox, 367 F.3d 993, 1000 (8th Cir. 2004)

(finding no materiality because the impeachment value was slight considering that the witness's

credibility had already been attacked on cross examination and damaging evidence came from

other witnesses).  The petitioner must show "a reasonable probability that, had the evidence been

disclosed to the defense, the result of the trial would have been different." Id. (emphasis added)

(citing United States v. Bagley, 473 U.S. 667, 682 (1985)).

### 1.  Ground Two:  State Failed to Disclose Exculpatory Evidence of a Deal Between the State and Witness Sam Miller

Petitioner's second claim for relief argues that the State failed to disclose exculpatory evidence of an implied or express deal between the state and witness Sam Miller in violation of due process.  (Petr's Mem. #1, p. 10-12, 20-23; Petr's Mem. #2, p. 6-10).  Petitioner alleges that the State agreed to dismiss a pending felony fleeing from the police charge in exchange for Sam Miller's cooperation with the Holappa murder investigation.   Even if no express deal existed, Petitioner asserts that due process requires the State to disclose the facts' surrounding the dismissal of Sam Miller's fleeing charge because the information had impeachment value.  (Id., p. 10, 22.)

The Minnesota Supreme Court upheld the factual finding of the postconviction court that a deal between Sam Miller and the State did not exist.  Miller, 754 N.W.2d at 707.  Moreover, the Court determined that even if there was a deal, disclosure would not have changed the outcome of the trial.  Id.   This court reviews the Minnesota Supreme Court's decision under the guidelines of the AEDPA.  The AEDPA offers a framework for analyzing the state court's legal conclusions, its application of federal law, and its factual findings. 28 U.S.C. § 2254. Because the Petitioner has not specified on what grounds he challenges the state court's decision, an analysis of all three grounds follows.

First, by applying Brady, the Minnesota Supreme Court's resolution of Petitioner's claim used the correct Supreme Court precedent.  See 28U.S.C. § 2254.  Therefore, petitioner cannot claim Minnesota court acted "contrary" to federal law.  28 U.S.C. § 2254.

Second, the Minnesota Supreme Court's decision did not result in an "unreasonable application of federal law."  Williams v. Taylor, 529 U.S. at 408.  The Minnesota Supreme Court analyzed the materiality and importance of the undisclosed information  as required under Brady.

Miller, 754 N.W.2d at 707; see also Strickler v. Greene, 527 U.S. at 281-82.  The Court did not apply Brady unreasonably.  Lyons, 403 F.3d at 592.

Third, Petitioner fails to demonstrate that the state courts' resolution was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Minnesota Supreme Court upheld the postconviction court's decision that no deal existed between Sam Miller and the State.  Miller, 754 N.W.2d at 707. Petitioner offers no new additional "clear and convincing evidence" to overcome the presumption of correctness given to state court factual determinations.  Dye, 208 F.3d at 665 (finding question of whether the state made a deal with a witness a factual question, entitled to a presumption of correctness unless the petitioner can clearly and convincingly show otherwise). Rather, Petitioner's memorandum and arguments all rely on the trial transcript and the transcript of the post-conviction hearing, both of which the Minnesota Supreme Court had access to and relied upon when making their decision.  The transcripts do not constitute new "clear and convincing evidence."

According to the Minnesota Supreme Court, the most important evidence provided by Sam Miller was reporting the Petitioner's statements that he was late in arriving to go dirt biking because he "had something to take care of" and that he emptied a clip in [Holappa]."  Miller, 754 N.W.2d at 707.  Any agreement with the State had little impeachment value because Sam Miller reported these statements to the police before he had any alleged deal.  Id.  Additionally, the Minnesota Supreme Court noted that any agreement between Sam Miller and the State did not require him to testify because by the time he testified at trial, the State had already dismissed the charges against him.  Id.

Further, the Minnesota Supreme Court found that even if there was a deal, "we conclude it is unlikely that the jury's verdict would have been more favorable ..." Id. Sam Miller arguably lacked credibility as a witness even without evidence of any alleged deal. Id. At trial, he admitted he had previously lied to the police. Id. He admitted to being high on methamphetamine during the period surrounding the kidnapping which made him unreliable. Id. Based on evidence of Sam Miller's lack of credibility having already been introduced into the record at trial by the defense, this Court finds the state court's determination that the failure to disclose any deal would not reasonably have altered the jury's verdict. 28 U.S.C. § 2254; Clay, 367 F.3d 993 (considering witness credibility in a Brady analysis).

Moreover, looking at the evidence in the case as a whole, Petitioner cannot show a "reasonable probability" that the result would have been different with the additional evidence. Id. at 1000. Even without Sam Miller's testimony, the jury was presented with sufficient evidence to find Petitioner guilty. For instance, the State presented testimony of Petitioner's involvement from two codefendants, Anderson and Ridlon. Miller, 754 N.W.2d at 694-96. In addition, Dunn testified that the Petitioner ordered him to destroy a gun. Id. at 695-96. The bullet casings found with Holappa's body matched the bullet casings found in Petitioner's car. Id. at 697. Prison phone calls between the Petitioner and his girlfriend provided additional circumstantial evidence of the Petitioner's guilt. Id. at 696. Hill recounted that Petitioner told him he sent Holappa "on a one-way ticket somewhere" and that "he wasn't coming back." Id. at 696. Combined with the evidence of the other 33 witnesses that testified at trial, the jury heard more than enough evidence to sustain the finding of Petitioner's guilt. As a result, Petitioner fails to demonstrate a "reasonable probability that, had the evidence been disclosed to the

defense, the result of the trial would have been different." <u>Clay</u>, 367 F.3d at 1000.  Petitioner's

second claim for relief is denied.

> **2.      Ground Three:  State's Failure to Disclose Witness Sam Miller's Prior Felonies**

In his third claim, Petitioner asserts that his constitutional right to due process was

violated because the State failed to disclose Sam Miller's prior felony convictions.  (Petr's Mem.

#1, p. 23-25; Petr's Mem. #2 p. 3-5).  Specifically, Petitioner argues that the evidence was

exculpatory under the <u>Brady</u> rule because it too could have been used to impeach the witness.

(Petr's Mem. #1, p. 23-25).  According to the petitioner, "with the undisclosed evidence, Sam

Miller became just another Anderson or Ridlon, whose credibility was to be questioned at every

point."  (Petr's Mem. #2, p. 4).  In addition, Petitioner alleges that the failure to disclose the prior

convictions violated Minn. R. Crim. P. 9.01 (Petr's Mem. #1, p. 23-25).

The Minnesota Supreme Court upheld the postconviction court's finding that the failure

to disclose Sam Miller's prior felony record was inadvertent and complied with Minn. R. Crim.

P. 9.01. <u>Miller</u>, 754 N.W.2d at 706. It found that the prosecutor followed normal office

procedure for obtaining criminal history records and used "reasonable efforts" as required under

Rule 9.01.  <u>Id</u>.  However, although the state court went on to find that the convictions were

exculpatory under <u>Brady</u> and should have been disclosed, <u>Id</u>., it reasoned that the oversight did

not prejudice the Petitioner because Sam Miller's credibility was otherwise successfully

impeached at trial.  <u>Id</u>.

Before the Court analyzes Petitioner's federal claims, it will briefly address Petitioner's

claim that the failure to disclose Sam Miller's prior felony record violated Minn. R. Crim. P.

9.01.  The Minnesota Supreme Court's decision that the failure to disclose did not violate Minn.

R. Crim. P. 9.01 rested on state law grounds.  <u>Id</u>.  Since "it is not the province of a federal habeas

court to reexamine state-court determinations on state-law questions," <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991), this court lacks the authority to analyze Petitioner's arguments that the prosecution acted in violation of Minnesota law.

However, the Court can analyze Petitioner's claim asserting that the state court acted in violation of the due process rights guaranteed by the federal constitution. On this claim, the Petitioner fails to specify whether he is making a claim under 28 U.S.C. § 2254(d)(1) or (d)(2). Thus, the court will separately analyze each provision. First, under (d)(1), the Petitioner fails to show that the decision was "contrary" to clearly established federal law. 28 U.S.C. § 2254(d)(1). Here, the Minnesota Supreme Court applied <u>Brady</u> which constitutes applicable federal precedent. Second, the state court's decision did not involve "an unreasonable application" of federal precedent. 28 U.S.C. § 2254(d)(1). The state court resolved Petitioner's claim by looking at whether the undisclosed evidence was exculpatory and material, which implements the guiding principles of <u>Brady</u>.

Finally, Petitioner fails to show that the state court's resolution was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Minnesota Supreme Court found that the Petitioner was unable to show he was prejudiced because Sam Miller's credibility was already otherwise impeached at trial. Petitioner offers no new, additional evidence that knowledge of Sam Miller's prior felonies would have altered the jury's assessment of his credibility or testimony. Nor has the Petitioner shown to a reasonable probability that the inclusion of Sam Miller's prior felonies would have made the outcome of the trial any different.[1] Petitioner heavily relies upon the

---

[1] In his memorandum supporting his amended petition, the Petitioner states that the prosecutor in this case had a history of violating discovery rules. (Petr's Mem. #2, p. 10). While the Court finds this assertion troubling, the Petitioner brings his Petition under <u>Brady</u>. Therefore, the question is whether the petitioner has shown "a <u>reasonable</u>

argument that Sam Miller provided the only <u>direct</u> evidence that the Petitioner killed Holappa, and therefore, if his testimony was discredited, the jury would have automatically altered their verdict.  (Petr's Mem. #2, p. 4-5).  However, "circumstantial evidence is entitled to the same weight as direct evidence."  <u>State v. Bauer</u>, 598 N.W.2d 352, 370 (Minn. 1999); <u>see</u> <u>also</u> <u>Sera v. Norris</u>, 400 F.3d 538, 547 (8th Cir. 2005). The jury is in the best position to evaluate the circumstantial evidence surrounding the crime and can rely upon it for a conviction.  <u>State v. Race</u>, 383 N.W.2d 656, 662 (Minn. 1986).[2]  Thus, Petitioner's third claim for relief is denied.

### 3.      Ground Four:  State Failed to Disclose Witness Sam Miller's Contacts with BCA Agents

Petitioner's fourth claim maintains that the State violated the Minn. R. Crim. P. 9.01 by failing to record contact between BCA agents and witness Sam Miller.  (Petr's Mem. #1, p. 16-17.)  Under Rule 9.01, the State must document and disclose contacts between witnesses and the State.  (<u>Id</u>.)  The Minnesota Supreme Court agreed with Petitioner that Rule 9.01 required disclosure of contact between Sam Miller and the BCA because the contacts constituted "any relevant written or recorded statements which relate to the case."  <u>Miller</u>, 754 N.W.2d at 705.  However, the court relied on <u>State v. Palubicki</u>, 700 N.W.2d 476, 490 (Minn. 2005), to find that since the undisclosed contacts were limited to those in which no new information was disclosed by the witness, Petitioner did not suffer any prejudice.  <u>Miller</u>, 754 N.W.2d at 705.

Courts grant a state prisoner habeas relief only if he is held in custody in violation of the Constitution, laws or treaties of the Untied States.  <u>Engle v. Isaac</u>, 456 U.S. 107 (1982); 28 U.S.C. § 2254.  While Petitioner's petition for habeas corpus premises his other claims on

---

<u>probability</u> that, had the evidence been disclosed to the defense, the result of the trial would have been different."  <u>Clay</u>, 367 F.3d at 1000.

[2] The Court notes that the Petitioner seems to be suggesting throughout his memorandum in support of his Petition that the evidence presented by the Government was not enough to convict him.  However, the Petitioner has not directly asserted such a sufficiency of evidence claim in either of his petitions.  As such, the Court need not consider such an argument.

federal law, his fourth claim relies only on state law violations. (Petr's Mem. #1, p. 11-12, 16-17).  He challenges the State's failure to disclose the details of contact between the State and Sam Miller as a violation of <u>Palubicki</u> and Minn. R. Crim. P. 9.01. Thus, he has not alleged a deprivation of federal rights as required under <u>Engle</u>. Further, his petition to the Minnesota Supreme Court and that court's decision rely solely on state law grounds.  (App. Br., p. 41-42.) State courts are "the ultimate expositors of state law," <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691 (1975), and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," <u>Estelle</u>, 502 U.S. at 67-68.  Thus, the Court cannot examine Petitioner's fourth claim because it solely asserts an alleged state law error.  Finally, even if Petitioner adequately presented his claim as a violation of federal law in his petition for habeas corpus relief, his claim still could not be heard on the merits.  Since Petitioner did not raise the claim as a federal law violation to the Minnesota Supreme Court and the Minnesota Supreme Court decided the case based on Minnesota law, the claim is procedurally defaulted. <u>See</u> <u>Armstrong</u>, 418 F.3d at 926.   For these reasons, Petitioner's fourth claim fails.

### D.      Ground Five: Petitioner's Failure to Correct False Testimony Claim

Petitioner's fifth claim argues that his constitutional right to due process was violated when the State failed to correct false testimony offered by witness Sam Miller.  (Petr's Mem. #1, p. 17-19.)  On cross examination, when the defense asked Sam Miller how many times he had been a police informant, he answered once.  (<u>Id</u>., p. 17.)  However, Petitioner argues that the State knew that Sam Miller served as an informant "four or five times" and should have corrected his testimony.  <u>Id</u>.  Petitioner claims that if the testimony was corrected, the testimony would have led to the disclosure of any deal between the State and Sam Miller.  (<u>Id</u>., p. 18; App.

Br., p. 58.)   Then, the defense could have used the information about Sam Miller's informant activities to impeach his testimony.  Id.

 "A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  United States v. Agurs, 427 U.S. 97, 103 (1976).  In such cases, the Petitioner must establish that (1) the testimony was in fact perjured and (2) the prosecuting officers knew that the testimony was false.  English v. United States, 998 F.2d 609, 611 (1993).  Courts use a different standard when the Petitioner alleges the State did not know of the false testimony.  United States v. Duke, 50 F.3d 571, 577 (8th Cir. 1995).

Here, Petitioner cites cases applying the Agurs standard. (See, Petr's Mem. #1, p. 17 (citing Mooney v. Holohan, 294 U.S. 103, 112 (1935); Napue v. Illinois, 360 U.S. 264, 269 (1959)).  However, the Minnesota Supreme Court only analyzed the case under state law and did not consider the federal claims.  It applied the state standard of Larrison v. United States, 24 F.2d 82 (7th Cir. 1928), which Minnesota adopted as its framework for analysis in false evidence cases.  Even though Larrison constitutes federal case law, it does not represent the analysis used by the 8th Circuit.  Evenstad v. Carlson, 470 F.3d 777, n. 6 (8th Cir. 2006) (citing Duke, 50 F.3d 571, 576-77 (8th Cir. 1995)).

The Minnesota Supreme Court did not apply applicable federal law; therefore, its application of state law only is not now reviewable.  However, even considering Petitioner's argument for the sake of discussion, and assuming the state court implicitly relied on federal law, Petitioner can only succeed if he shows the conclusion was "contrary to" applicable federal law or involves an "unreasonable application" of federal law.  28 U.S.C. § 2254(d)(1).  Petitioner has not met this burden.  Under Agur, even if Sam Miller testified falsely, the Petitioner must show a

"reasonable likelihood that the false testimony could have affected the judgment of the jury."
Agurs, 427 U.S. at 103.  Petitioner argues that the fact that Sam Miller acted as an informant
more than once could be used to impeach the witness and show that "there was a bit more to the
whole person of Sam Miller . . ."  (Petr's Mem. #1, p. 18.)  According to the Petitioner, Sam
Miller's testimony constituted the only direct evidence in the State's case.  (Id.)  Thus, any
testimony impeaching his character and showing his motive for testifying would have "tended to
reduce Miller's guilty below first degree murder."  (Id.)  However, even without evidence of
additional informant activities, as previously noted, the defense was able to impugn Sam Miller's
character.  As discussed above, he admitted lying to the police and being on drugs during the
relevant events.  Furthermore, the defense impeached Sam Miller by leading him to admit that he
had been an informant once before.  Miller, 754 N.W.2d at 708.  He also admitted that he would
tell the police whatever they wanted to hear to get out of jail.  Id.  These admissions damaged the
credibility of Sam Miller's testimony by providing proof that he acted dishonestly before and
was willing to do whatever it took to protect himself.  Thus, the State court's decision to uphold
the conviction was not "contrary to" or an "unreasonable application" of federal law since
Petitioner can not meet the standard of Agur.  28 U.S.C. § 2254.

As for the third prong of an AEDPA analysis, the Minnesota Supreme Court based its
decision on a factual finding.  It upheld the determination of the postconviction state court's
determination that Sam Miller's testimony about his conduct as an informant was in fact not
false, "but instead a matter of context."  Miller, 754 N.W.2d at 708.  Because the federal court
presumes that the state court's factual determinations are correct," Lee v. Gammon, 222 F.3d
441, 442 (8th Cir. 2000), the Petitioner can only rebut the presumption by "clear and convincing
evidence."  Id.; 28 U.S.C. § 2254(e)(1).  Here, Petitioner offers no new, additional evidence

explaining why the Minnesota courts determination that the testimony was not false should be overturned.  Thus, the Petitioner has not met the "clear and convincing" standard.  Therefore, the Court finds that Petitioner is not entitled to relief on this fifth claim.

### E.      Ground Six:  Petitioner's Ineffective Assistance of Counsel Claim

Petitioner's next claim argues that his attorney failed to provide effective assistance of counsel as required under the Sixth Amendment. (Petr's Mem. #1, p. 19). Specifically, Petitioner's attorney failed to independently investigate Sam Miller's prior criminal record and a possible deal between the State and Sam Miller . Id.  In a related assertion, Petitioner claims that his trial counsel should have cross examined Sam Miller about any possible deal he made with the state.  (Id., p. 25).   In his brief to the Minnesota Supreme Court, Petitioner argued that his counsel should have gone to the St. Louis County courthouse to obtain Sam Miller's prior convictions and the dismissal of his fleeing police felony.  (App. Br., p. 62).  However, Petitioner did not challenge his defense counsel's behavior on cross-examination in his brief on appeal to the Minnesota Supreme Court.  (See App. Br.)

To establish a claim of ineffective assistance of counsel, petitioner must satisfy the two step test found in Strickland v. Washington, 466 U.S. 668 (1984).  First, the movant must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. Under this prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness.  Stacey v. Solem, 801 F.2d 1048, 1051 (8th Cir. 1986).

Second, the petitioner must show that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  "[I]t is not sufficient for a defendant to show that the error had some

'conceivable effect' on the result of the proceeding. . ." Id. Federal courts give state courts "even more latitude to reasonably determine that a defendant has not satisfied that standard," Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009), when determining whether the state court applied "Strickland to the facts of his case in an objectively unreasonable manner." Ringo v. Roper, 472 F.3d 1001, 1003 (8th Cir. 2007).

Here, the Minnesota Supreme Court applied the correct federal precedent when it analyzed Petitioner's claim under the Strickland test. The Minnesota Supreme Court applied Strickland to find that Petitioner's counsel followed his normal procedure, the evidence from the postconviction hearing did not demonstrate counsel was ineffective and no new, additional evidence was produced to overcome the presumption that counsel's performance fell within acceptable standards of professional assistance. Miller, 754 N.W.2d at 709. Even if Petitioner met Strickland's first prong, his ineffective assistance of counsel claim must fail because he cannot show that but for counsel's errors, the result of the trial would have been different. See, Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998) (finding that the court does not have to decide the first prong of the Strickland test if prejudice cannot be shown). As already analyzed above, even without evidence of Sam Miller's prior felonies and alleged deal with the prosecution, the State presented enough additional evidence to sustain the jury in finding the Petitioner guilty of murder.

Finally, Petitioner's argument that his attorney should have cross examined Sam Miller about his prior convictions cannot be assessed on the merits. Petitioner failed to raise that claim to the Minnesota Supreme Court on appeal below. Thus, this assertion is procedurally defaulted. See Armstrong, 418 F.3d at 926.

Petitioner's Sixth Amendment claim must be denied.

**F.      Ground Seven: Ineffective Assistance of Trial and Appellate Counsel for Failing to Raise an Ex Post Facto Sentence Claim (Ground Three of Amended Complaint).**

Finally, in a new claim raised only in his Amended Petition, the Petitioner argues that his sentence of life in prison without the possibility of parole violated the Ex Post Facto Clause of the United States Constitution.  According to the Petitioner, the failure of both his trial and appellate counsel to raise this issue violated the Sixth Amendment's right to effective assistance of counsel.  (Mem. in Support of Amended Petition (Petr's Mem. #2) [Docket No. 30], pp. 11-14).  The Petition contends that the life without possible of parole was not mandated under Minn. Stat. § 609.185 until 2005 which was after the Petitioner committed the crime at issue.  Therefore, the imposition of life without the possibility of parole violated the Ex Post Facto Clause.

**1.   Ineffectiveness of Trial Counsel**

As the Court discussed above, a petitioner must first exhaust all the available state court remedies before the Court can entertain a petition for a writ of habeas corpus.  28 U.S.C. § 2254(b).  Here, the Petitioner has not raised his argument that his trial counsel was ineffective for not raising his ex post facto sentence in front of any state court. As such, the claim remains unexhausted.

When a claim raised in a habeas petitioner remains unexhausted, federal courts review whether the unexhausted claim is procedurally defaulted meaning that state law bars the claim from being heard in state court.  McCall, 114 F.3d at 757.   Minnesota courts have "consistently held that a claim raised on direct appeal will not be considered upon a subsequent petition for post conviction relief." Roby, 521 N.W.2d at 484.  Additionally, Minnesota precludes relief for

"all claims known but not raised by the defendant …" at the time of the direct appeal.  Carney, 692 N.W.2d at 891.

In this case, the facts giving rise to the Petitioner's alleged ex post facto claim existed at the time of his direct appeal.  The Petitioner could have raised this argument in his direct appeal to the Minnesota Supreme Court.  Therefore, the Petitioner has no further recourse under Minnesota law regarding the ineffectiveness of his trial counsel.  As such, the Petitioner's claim is procedurally defaulted.

Additionally, the Petitioner has not shown "cause for the default and prejudice as a result of the alleged violation of federal law" such that the Court can review the procedurally defaulted claim.  Reagan, 279 F.3d 651.  To show cause, Petitioner has to show that "something external to the petitioner" prevented him from raising his claim in state court.  Coleman, 501 U.S. at 753.  Petitioner can make no such showing.  Petitioner's only excuse is that he was not aware of the claim "until a 'jailhouse lawyer' informed him of the substance of the claim."  (Am. Pet., p. 10).  However, this is not "something external to the petitioner."  Therefore, the cause and prejudice exception does not apply here.   In addition, Petitioner cannot meet the "fundamental miscarriage of justice" exception because he failed to present any "reliable new evidence" providing clear and convincing proof that he is actually innocent of Holappa's murder.  See Cox, 398 F.3d at 1031.  As such, Petitioner's procedural default cannot be overcome and this Court remains unable to consider his claim.

### 2.  Ineffectiveness of Appellate Counsel

As to the Petitioner's claim that his appellate counsel was ineffective,  such a claim may be brought in a petition for post conviction relief after the direct appeal has been completed because it could not have been known at the time of direct appeal.  Leake v. State, 737 N.W.2d

531, 536 (Minn. 2007).  Consequently, the Petitioner's claim regarding the ineffectiveness of his appellate counsel remains unexhausted.

Generally, courts do not consider claims on a petition for habeas corpus that are unexhausted.  Courts base the exhaustion requirement on the principles of comity and federalism in order to ensure that state courts are given the first opportunity to correct alleged errors raised by state prisoners.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  A "mixed petition," or one that includes both exhausted an unexhausted claims, must be dismissed for non-exhaustion.  Rose v. Lundy, 455 U.S. 509, 510 (1982).  Thus, under standard habeas procedure, the Petitioner's entire claim would have to be dismissed on the basis of Petitioner's failure to exhaust his state court remedies.

However, because the Petitioner's unexhausted claim is meritless, the Court instead decides the case on the merits under 28 U.S.C. § 2254(b)(2) which states that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  See also Trussell v. Bowersox, 447 F.3d 588, 590 (8th Cir. 2006) (confirming that procedural default is not a jurisdictional bar to review of a habeas claim, and addressing petitioner's apparently defaulted claim on the merits).  When the resolution of a petitioner's claim is "simple and plain," the Court may proceed to decide the case on the merits.  Thornblad v. Olson, 952 F.2d 1037, 1038 (8th Cir. 1992) (deciding a habeas petition by the Petitioner on the merits rather than on procedural grounds); see also, Cindrich v. Minnesota, 2010 WL 2301530, at *4 (D. Minn. Feb. 23, 2010); Fields v. Fabian, 2008 WL 2788075, at *8 (D. Minn. Jul. 15, 2008) (proceeding to decide

unexhausted claim on the merits because the Petitioner would be unable to prevail on his claim even if he had exhausted his state court claim).[3]

Here, the Petitioner's argument regarding the ineffectiveness of his appellate counsel for failing to raise that his sentence was imposed in violation of the Ex Post Facto Clause is plainly meritless.  To establish a claim of ineffective assistance of counsel, petitioner must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Strickland, 466 U.S. at 687 (1984).  To succeed, the petitioner must show that counsel's representation fell below an objective standard of reasonableness.  Stacey, 801 F.2d at 1051.

However, the Plaintiff is unable to show that his appellate counsel's ineffectiveness fell below an objective standard of reasonableness because his argument is based on a misreading of the Minnesota statutes.  In his memorandum, Plaintiff asserts that since "the punishment for committing a first degree murder offense in Minnesota during July of 2004 was not automatically life in prison without the possibility of parole until August 1, 2005, the state

---

[3] The unique procedural posture of this case also renders a decision on the merits appropriate.  Generally, when faced with an unexhausted petition, like in this case, the Court will dismiss the entirety of the Plaintiff's petition without prejudice to allow the Petitioner to exhaust his state court remedies and bring another petition for a writ of habeas corpus.  In fact, the Plaintiff acknowledged as such in his memorandum supporting his amended petition.  However, in this case the Petitioner would be unable to bring the claims which were already subject to direct review by the Minnesota Supreme Court on a subsequent petition because his claims would be time barred under 28 U.S.C. § 2244(d) which provides a one-year statute of limitations for habeas petitions.  The one-year statute of limitations began to run when Petitioner's judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d).   In this case, the Minnesota Supreme Court issued its final decision on August 21, 2008.  However, the judgment did not become final until the expiration for filing a petition for writ of certiori with the United States Supreme Court.  Smith v. Bowersox, 159 F.3d 345 (8th Cir. 1998) (state criminal convictions not final for statute of limitations purposes until the deadline for seeking certiorari has expired).  A petition for certiori must be filed within 90 days after a final adjudication by a state's highest court.  Sup. Ct. R. 13.1.  Therefore, the Petitioner's judgment became final on Wednesday, November 19, 2008 and the one-year statute of limitations expired on November 19, 2009.

Additionally, a stay pending the outcome of any state court post conviction review would be improper.  As the Supreme Court stated in Rhines v. Weber, 544 U.S. 269, 277 (2005), stay and abeyances should only be granted in "limited circumstances."  Even if the Petitioner has good cause for his failure to first exhaust his claims in state court, "the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." Id.  Here, the Petitioner's unexhausted claim is meritless rendering a stay inappropriate in this case.

district court imposed an ex post facto sentence." (Petr's Mem. #2, p. 11). According to the Defendant, the district court improperly imposed the 2005 version of Minn. Stat. § 609.185 rather than the 2004 version.

Petitioner's argument assumes that there is material difference between the 2004 and 2005 versions of the statute which would cause his sentence to change. After reviewing the 2004 and 2005 versions of Minn. Stat. § 609.185, the Court finds that the Petitioner would have received the same sentence in 2004 as in 2005. In fact, the 2004 and 2005 versions of Minn. Stat. § 609.185 are exactly the same except for one small word change in clause (a)(5).[4] The 2005 version changes "upon the child" to "upon a child" in section (a)(5). Compare Minn. Stat. § 609.185 (2004) with Minn. Stat. § 609.185 (2005). Because the Petitioner was convicted for

---

[4] The 2005 version of Minn. Stat. § 609.185(a) reads in its entirety:

**609.185 Murder in the first degree.**

(a)     Whoever does any of the following is guilty of murder in the first degree and shall be sentenced to imprisonment for  life:

    (1)     causes the death of a human being with premeditation  and with intent to effect the death of the person or or of another;

    (2)      causes the death of a human being while committing or attempting to commit criminal sexual conduct in the first or second degree with force or violence, either upon or affecting  the person or another;

    (3)     causes the death of a human being with intent to effect the death of the person or another, while committing or attempting to commit burglary, aggravated robbery, kidnapping, arson in the first or second degree, a drive-by shooting, tampering with a witness in the first degree, escape from custody, or any felony violation of chapter 152 involving the unlawful sale of a controlled substance;

    (4)      causes the death of a peace officer or a guard employed at a Minnesota state or local correctional facility, with intent to effect the death of that person or another, while the peace officer or guard is engaged in the performance of official duties;

    (5)     causes the death of a minor while committing child  abuse, when the perpetrator has engaged in a past pattern of child abuse upon a child and the death occurs under circumstances manifesting an extreme indifference to human life;

    (6)     causes the death of a human being while committing  domestic abuse, when the perpetrator has engaged in a past pattern of domestic abuse upon the victim or upon another family  or household member and the death occurs under circumstances manifesting an extreme indifference to human life; or

    (7)      causes the death of a human being while committing, conspiring to commit, or attempting to commit a felony crime to  further terrorism and the death occurs under circumstances  manifesting an extreme indifference to human life.

violating Minn. Stat. 609.185(a)(3), the change in no way affects his sentence.  <u>Miller</u>, 754

N.W.2d at 697.

Moreover, Minn. Stat. § 609.106 which lists the crimes for which life imprisonment

without the possibility of release is the proper sentence did not change from 2004 to 2005 as

applied to the Petitioner.  The 2004 version of Minn. Stat. § 609.106 provided that:

> Subd. 2.  **Life without release.** The court shall sentence a person to life
> imprisonment without possibility of  release under the following circumstances:
>
> (1) the person is convicted of first degree murder under  section 609.185,
> paragraph (a), clause (2), (4), or (7);
>
> (2) the person is convicted of committing first degree  murder in the course of a
> kidnapping under section 609.185,  clause (3); or
>
> (3) the person is convicted of first degree murder under  section 609.185, clause
> (1), (3), (5), or (6), and the court determines on the record at the time of
> sentencing that the person has one or more previous convictions for a heinous
> crime.

Because Petitioner was convicted of violating Minn. Stat. § 609.185(a)(3) for committing first

degree murder in the course of a kidnapping, the Petitioner was properly sentenced to life

imprisonment under Minn. Stat. § 609.106, subd. (2).  Minn. Stat §609.106 did substantively

change in 2005 when the legislature changed subdivision 2(1) to mandate life imprisonment if,

"the person is convicted of first degree murder under section 609.185, paragraph (a), clause (1),

(2), (4), or (7)".  Thus, the 2005 version of the statute added life imprisonment for a person who

violated § 609.185(a)(1) and the 2005 change did not affect him.  However, as mentioned before,

the Petitioner was convicted of violating Minn. Stat. § 609.185(a)(3) not § 609.185(a)(1).

Therefore, his sentence did not violate the Ex Post Facto Clause and his appellate counsel's

decision not to raise such an argument clearly does not fall below an objective standard of

reasonableness.  Consequently, the Court recommends a denial of Petitioner's Amended Petition as to this claim.

## III.   RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED:**

1.       That the undersigned's previous Report and Recommendation (Docket No. 15) be **VACATED;**

2.       That Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Docket No. 1] be **DENIED;**

3.       That Petitioner's Amended Petition filed as an Attachment to the Petitioner's Motion for Leave to File Amended Application for a Writ of Habeas Corpus [Docket No. 18, Attachment 1] be **DENIED;** and

4.       That the Respondent's Motion to Dismiss be **GRANTED** and this action be **DISMISSED WITH PREJUDICE.**

## IV.   CERTIFICATE OF APPEALABILITY

The Court grants a Certificate of Appealability where the petitioner makes a substantial showing of the denial of a constitutional right.  See, 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997). To succeed, the Petitioner must show that the issues are "debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994).  Here, the Court finds it improbable that any other court would decide the issues Petitioner presents any

differently or find that any issue warrants further proceedings.  Thus, the Court further

recommends that Petitioner should not be granted a Certificate of Appealability.


Dated: August 16, 2011                                              s/Leo I. Brisbois
                                                                    LEO I. BRISBOIS
                                                                    United States Magistrate Judge


### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation

by filing with the Clerk of Court, and serving all parties **by August 30, 2011**, a writing that

specifically identifies the portions of the Report to which objections are made and the bases for

each objection. A party may respond to the objections within fourteen days of service thereof.

Written submissions by any party shall comply with the applicable word limitations provided for

in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the

objecting party's right to seek review in the Court of Appeals.  This Report and

Recommendation does not constitute an order or judgment from the District Court, and it is

therefore not directly appealable to the Court of Appeals.